**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARIAH SMITH and | ) | |
| CRYSTAL WATERS, individually and on | ) | |
| behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 19-cv-5148 |
| | ) | |
| v. | ) | JURY DEMANDED |
| | ) | |
| ADVOCATE HEALTH | ) | |
| CARE NETWORK, | ) | |
| | ) | |
| Defendant. | ) | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs, Mariah Smith and Crystal Waters, individually and on behalf of all other persons similarly situated, known and unknown, through their attorneys, complain against Defendant Advocate Health Care Network ("Advocate" or "Defendant"), as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1.  This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.* ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS § 115/1 *et seq.* ("IWPCA"), for Defendant's failure to pay Plaintiffs and other similarly situated persons all earned regular and overtime pay for all time worked.

2.  Defendant manages, controls and operates customer service call centers within this judicial district and throughout the country and employs, manages and controls the telephone-based workers who are the putative class and collective members in this lawsuit. The telephone-dedicated employees in this case handled phone calls regarding medical treatment of Advocate's patients and related issues.

3.     Defendant required Plaintiffs and similarly situated telephone-dedicated employees to be ready to handle a call at the start of their scheduled shift times.

4.     In order to be ready to handle a call at the start of their scheduled shift time, Plaintiffs and similarly situated telephone-dedicated employees had to first boot up their computers, open various software programs necessary for handling a call and/or read company work email regarding services and information for the day's calls.

5.     Under its policies and practices, Defendant regularly failed to pay the telephone-dedicated employees for this pre-shift work.

6.     Additionally, under Defendant's policies and practices, Plaintiffs and similarly situated telephone-dedicated employees had to be available to handle a call until the end of their scheduled shift time.  As a result, they regularly worked past the end of their scheduled shift time when completing customer calls, closing their software programs and securing confidential information.

7.     Defendant knowingly required and/or permitted Plaintiffs, who worked as telephone-dedicated employees, and other similarly situated telephone-dedicated employees, to perform unpaid work before and after the start and end times of their shifts, including but not limited to booting up computers, initializing several software programs, reading company issued emails and instructions prior to the start of their scheduled shift time, and completing customer service calls, closing down the software programs and securing any customer or confidential information after the end of their scheduled shift time.

8.     The amount of uncompensated time Plaintiffs and those similarly situated to them spend or have spent on these required and unpaid work activities averages approximately ten (10) minutes per day and sometimes more per person.

2

9.      Plaintiffs bring their FLSA overtime claims as a collective action pursuant to 29 U.S.C. 216(b) on behalf of telephone-dedicated employees who worked for Defendant in the United States.  Plaintiffs bring their IMWL overtime claims and IWPCA unpaid wage claims as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Illinois telephone-dedicated employees.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction over Plaintiffs' FLSA claims in this action under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

11.      This Court has supplemental jurisdiction over all class claims in this action under 28 U.S.C. § 1367.

## THE PARTIES

12.      Plaintiff Mariah Smith is an individual who Defendant employed from approximately February 2018 to January 2019 as an hourly, non-exempt, telephone-dedicated employee who was placed to work in a call center operated by Advocate located at 8550 West Bryn Mawr in Chicago Illinois, Illinois.  Plaintiff Smith resides in and is domiciled within this judicial district.

13.      Plaintiff Crystal Waters is an individual who Defendant employed from approximately July 2018 to January 2019.  Waters initially was placed at Advocate's Oak Brook, Illinois call center though a staffing agency.  She subsequently became a direct employee as an hourly, non-exempt, telephone-dedicated employee at Advocate's Oak Brook, Illinois call center.  Plaintiff Waters resides in and is domiciled within this judicial district.

14.      Defendant Advocate Health Care Network is an Illinois not-for-profit corporation.

15.      Advocate Health Care is the largest health center in Illinois.

16.      Defendant employed Plaintiffs and other similarly situated persons as "employees,"

3

as that term is defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e), Section 3(d) of the IMWL, 820 ILCS § 105/3(d), and Section 2 of the IWPCA, 820 ILCS § 115/2.

17.     At all relevant times, Defendant was an "employer" of Plaintiffs and other similarly situated persons, as that term is defined by Section 3(d) of the FLSA, 29 U.S.C. § 203(d), Section 3(c) of the IMWL, 820 ILCS § 105/3(c), and Section 2 of the IWPCA, 820 ILCS § 115/2.

## FACTUAL ALLEGATIONS

### A.     *Defendant Operates Call Centers Where It Employs Phone Representatives*

17.     During the recovery periods at issue in this case, Defendant has operated call centers in Chicago, Oak Brook, and Rosemont, Illinois, and possibly elsewhere, where it employs telephone-dedicated workers whose job duties primarily consisted of handling phone calls related to medical treatment of Advocate's patients and related issues.

18.     During the recovery periods at issue in this case, the telephone-dedicated employees at Defendant's call centers handled calls using telephone systems, computers, software, and databases that are owned, controlled and/or managed by Defendant and that are or were located in call centers operated by Defendant.

19.     During the recovery periods at issue in this case, Defendant utilized staffing and temporary agencies to recruit individuals to work as telephone-dedicated phone representatives who handled calls at Defendant's call centers.

20.     Defendant and the staffing and/or temporary agencies have an agreement to share the services of the similarly situated telephone-based employees.

21.     Defendant and the staffing and/or temporary agencies earn revenue and profits from the services of the similarly situated telephone-dedicated employees.

22.     Prior to starting work on the call center floor, Plaintiffs and other similarly situated telephone-dedicated employees were and are interviewed by employees and managers of Defendant.  Defendant's managers had the final say as to whether persons such as Plaintiffs would be allowed to work for Advocate.

23.     Once an individual is hired to work as a telephone-dedicated customer service representative for Defendant, he or she labors under Defendant's attendance, punctuality and tardiness policies and practices and its performance metrics and requirements.  Additionally, Defendant supervises and controls the work schedules of the similarly situated telephone-dedicated employees.

24.     At all material times, Defendant had the power to hire and fire Plaintiffs and the putative collective and class of telephone-dedicated employees.  At all times relevant hereto, Defendant determined the rate of pay for Plaintiffs and the similarly situated telephone-dedicated employees.

25.     At the Advocate call centers where Plaintiffs worked, Defendant's managers were always working on the floor of the call center during the workday, managing, monitoring and directing the work activities of the Plaintiffs and other similarly situated persons, including the policies and practices at issue.

   B.     **Defendant's Practice of Requiring and/or Permitting Telephone-Dedicated Hourly Employees to Work Before and After Their Scheduled Shift Time**

26.     At its call centers, Defendant required Plaintiffs and similarly situated telephone-dedicated employees to be ready to handle a call at the start of their scheduled shift times.

27.     In order to be ready to handle a call at the start of their shift time, Plaintiffs and similarly situated telephone-dedicated employees regularly arrived at their work station before the

start of their scheduled shift time, logged into their computer, booted up several software programs, and read company issued emails and instructions, prior to the start of their scheduled shift time.

28.     Defendant's policy and practice was to not pay for the pre-shift work.  One of the means by which Defendant enforced its policy of not paying for pre-shift work was through a rounding policy that resulted in Plaintiffs and the putative collective and class of telephone-dedicated employees not being paid for the time worked before their scheduled start time.

29.     Under Defendant's policies and practices, at the end of their daily shifts, Plaintiffs and the putative collective and class of telephone-dedicated employees had to be available to handle calls until the end of their scheduled shift time.

30.     Defendant does not allow telephone-based employees to use Advocate's phones and computers for any personal use.  Additionally, Defendant generally prohibits and does not allow telephone-based employees to use their own personal cell phones on the call center floor. Under Defendant's policies and practices, telephone-based employees are required to store their personal cell phones during the work day and can generally only use them on breaks and off the call center floor.

31.     Advocate's managers on the call center floor could and did regularly see that Plaintiffs and similarly situated telephone-based employees arrived at their work stations before the start of their scheduled shift time, logged into Advocate's computers, and began working on their computers prior to the start of their scheduled shift time.

32.     Despite seeing and knowing that Plaintiffs and similarly situated telephone-based employees performed work at their work stations prior to their scheduled shift time start, Defendant's managers on the floor of the call center did not make any effort to stop or otherwise disallow this pre-shift work and instead allowed and permitted it to happen.

33.     Defendant possesses, controls and/or has access to information and electronic data that shows the times Plaintiffs and similarly situated telephone-based employees logged into their computers each day and the time they logged into their telephone systems.

34.     By possessing, controlling and/or accessing this information, Defendant knew that Plaintiffs and similarly situated telephone-based employees worked prior to the start of their scheduled shift time.

35.     Despite having this information and knowing that Plaintiffs and similarly situated telephone-based employees logged into their computers, initialized necessary software programs, and read company issued emails and instructions prior to the start of their scheduled shift time, Defendant did not make any effort to stop or otherwise disallow this pre-shift work and instead allowed and permitted it to happen.

36.     The amount of uncompensated time Plaintiffs and those similarly situated to them spend or have spent on these required and unpaid work activities averages approximately ten (10) minutes per day and sometimes more per person.

> ### C.     Defendant Knew of and Assented to the Unpaid Work

37.     Defendant's policy and practice requires and/or permits telephone-based employees to be logged into their phones by the employee's scheduled start time.

38.     In order to be logged into its telephone systems, Defendant required and/or permitted Plaintiffs and similarly situated telephone-based employees to arrive at their work station prior to their scheduled shift time and boot up computers, initialize several software programs, and read company emails and instructions.

39.     Under Defendant's policy and practice, a telephone-dedicated employee is subject to discipline up to and including termination if they are not logged into their phones and ready to

handle calls by the start of their scheduled shift time.

40.     These policies and practices of Defendant result in telephone-based employees, including the Plaintiffs, booting up their computers, initializing several software programs and/or reading company emails and instructions prior to their start of their scheduled shift time.

41.     As set forth herein, via its policies and practices and through its own telephone and computer systems, Defendant knew and was aware that the telephone-based employees performed work prior to the start of their scheduled shift time and after the end of their scheduled shift time.

42.     Defendant did not instruct Plaintiffs and similarly situated telephone-based employees to not log into their computers or telephone, or to not read company emails prior to the start of their scheduled shift time.  Rather, Defendant required, permitted and/or allowed Plaintiffs and the putative collective and class members to work prior to their scheduled shift time and after the end of their scheduled shift time.

43.     By knowing of, permitting and/or requiring Plaintiffs and similarly situated telephone-based employees to log into their computers, initialize their various software programs and/or read company email and instructions prior to the start of their scheduled shift time, Defendant assented to them performing this work.

44.     By knowing of, permitting and/or requiring Plaintiffs and similarly situated telephone-based employees to close their software programs, complete their calls and/or secure confidential information after the end of their scheduled shift time, Defendant assented to them performing this work.

   **C.     Defendant's Failure to Pay Regular and/or Overtime Wages to Its Telephone-Based Hourly Employees**

45.     Defendant initially scheduled Plaintiff Smith to work from 11:15 a.m.  to 7:45 p.m., with a 30-minute meal break during the workday. Defendant changed Plaintiff Smith's

schedule to 8:30 a.m. to 5:00 p.m., with a 30-minute meal break during the workday

46.     Defendant generally scheduled Plaintiff Waters to work from 8:00 a.m. to 4:30 p.m., with a 30-minute meal break during the workday.

47.     Both Plaintiffs typically worked an average of about 10 minutes prior to their scheduled shift start time without pay each day.

48.     The net effect of Defendant's policies and practices, instituted and approved by Defendant's managers, is that Defendant willfully failed to pay regular and overtime compensation to Plaintiffs and others similarly situated, and willfully failed to keep accurate time records to save payroll costs.  Defendant thus enjoyed ill-gained profits at the expense of its hourly employees.

49.     Plaintiffs and others similarly situated at times work or worked in excess of forty hours per week for Defendant in a given workweek.

50.     Defendant's policy and practice of requiring and/or permitting its employees, including Plaintiffs and other non-exempt, hourly employees, to perform work without pay for such work performed, violates Section 6 of the FLSA, 29 U.S.C. § 206, Section 4 of the IMWL, 820 ILCS § 105/4, and Section 4 of the IWPCA, 820 ILCS § 115/4.

51.     Defendant's policy and practice of requiring its employees to perform work without pay in many instances has caused and continues to cause Plaintiffs and certain other similarly situated hourly employees to work in excess of forty hours per week, without being properly compensated at a wage of 1.5 times their respective hourly rate for such work performed, as required by Section 7 of the FLSA, 29 U.S.C. § 207, and Section 4a of the IMWL, 820 ILCS § 105/4a.

52.     Defendant's failure to compensate its non-exempt, hourly call center employees with the full amount of the applicable regular wage or overtime wage has caused Plaintiffs and

other similarly situated non-exempt call center employees to suffer harm.

53.     Defendant's non-exempt, call center hourly employees are entitled to compensation for all time they worked without pay in any given workweek.

   **D.     *Defendant's Failure to Pay Agreed-Upon Hourly Rates For Work To Which Defendant Assented***

54.     At all times relevant hereto, Defendant paid, and agreed to pay, Plaintiffs and similarly situated employees in Illinois more than the federal and state minimum wage.

55.     For example, when Defendant hired Plaintiff Smith in February 2018, Defendant agreed to pay Plaintiff $14.55 per hour for all work Defendant permitted and/or required of her, which is more than the applicable federal and state minimum wage.

56.     When Plaintiff Waters began working for Defendant through a staffing agency in July 2017, Defendant agreed to pay Plaintiff $14.50 per hour for all work Defendant permitted and/or required of her, which is more than the applicable federal and state minimum wage.  When Plaintiff Waters became a direct employee of Advocate, Defendant agreed to pay Plaintiff $18.98 per hour for all work Defendant permitted and/or required of her, which is more than the applicable federal and state minimum wage.

57.     At all times relevant hereto, Defendant agreed to pay Plaintiffs and a class of similarly situated Illinois employees more than the state minimum wage for all work permitted and/or required by Defendant.

58.     At all times relevant hereto, Defendant agreed to compensate its hourly employees for all "work" that Defendant required and/or permitted.

59.     Booting up computers, initializing several software programs, reading company email or instructions, and completing customer service calls is "work" for which Plaintiffs and similarly situated Illinois employees are entitled to their agreed-upon rate of pay.

60.     Despite its agreement to pay Plaintiffs and similarly situated Illinois employees more than the statutory minimum wage for their work, and despite assenting to the work described herein, Defendant did not pay Plaintiffs and certain other similarly situated Illinois employees their agreed-upon rate for performing all work permitted, required and/or assented to by Defendant. This work includes the time spent booting up their computers, initializing their software programs for their calls, and reading company email and instructions prior to the start of their scheduled shift time; and the time spent completing customer service calls, closing down the software programs, and logging off the system after the end of their scheduled shift times.

61.     Defendant's failure to compensate Plaintiffs and other similarly situated Illinois employees at their agreed-upon wage for work it permitted, required and/or assented to has caused Plaintiff and other similarly situated employees to suffer harm.

## COLLECTIVE ACTION ALLEGATIONS

62.     Plaintiffs bring Count I of this Complaint as a collective action on behalf of themselves and all other current and former hourly employees of Defendant who Defendant required to perform the work described herein without pay.

63.     Plaintiffs' Counsel seek to send notice of this lawsuit to the following described persons:

> All persons who worked for Defendant as telephone-dedicated employees, however titled, and who were compensated, in part or in full, on an hourly basis throughout the United States at any time between July 30, 2016 and the present who did not receive the full amount of overtime wages earned and owed to them.

64.     Plaintiffs and the other employees are similarly situated to one another because their duties consisted primarily of handling phone calls related to medical treatment of Advocate patients and related issues.

65.     Plaintiffs and others similarly situated all shared similar policies, job titles, job

descriptions, training, job duties and compensation, among other things.

66.     Plaintiffs and the other employees are also similar because Defendant did not pay them for all time they actually worked.

67.     Defendant knowingly required Plaintiffs and the similarly situated individuals to perform unpaid work before and after their scheduled shifts, including but not limited to booting-up computers, initializing several software programs, reading company emails and instructions, and completing customer service calls.

68.     There are questions of law or fact common to the employees described in paragraph 63.

69.     Plaintiffs are similarly situated to the employees described in paragraph 63, as Plaintiffs' claims are typical of the claims of those persons.

70.     Plaintiffs' claims or defenses are typical of the claims or defenses of the persons described in paragraph 63.

71.     This is not a collusive or friendly action.  Plaintiffs have retained counsel experienced in complex employment litigation, and Plaintiffs and their counsel will fairly and adequately protect the interests of the persons described in paragraph 63.

72.     A collective action is the most appropriate method for the fair and efficient resolution of the matters alleged in Count I.

73.     At all relevant times, Defendant employed Plaintiffs and the persons described in paragraph 63.

<u>**CLASS ACTION ALLEGATIONS**</u>

74.     Plaintiffs bring Counts II and III as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and all other current and former hourly employees of Defendant who

Defendant required to perform the work described herein without pay.

75.     With respect to Plaintiffs' IMWL claims, Plaintiffs seek to represent a class that is comprised of and defined as:

> All persons who worked for Defendant as telephone-dedicated employees, however titled, who were compensated, in part or in full, on an hourly basis in Illinois at any time between July 30, 2016 and the present who did not receive the full amount of overtime wages earned and owed to them (the "IMWL Class").

76.     With respect to Plaintiffs' IWPCA claims, Plaintiffs seek to represent a class that is comprised of and defined as:

> All persons who worked for Defendant as telephone-dedicated employees, however titled, who were compensated, in part or in full, on an hourly basis in Illinois at any time between July 30, 2009 and the present whose hourly rate exceeded the applicable Illinois minimum wage and who did not receive the full amount of wages earned and owed to them (herein the "IWPCA Class").

77.     This action is being brought as a class action pursuant to Fed. R. Civ. P. 23, because the IMWL Class and IWPCA Class are so numerous that joinder of all class members is impracticable.

78.     Plaintiffs and the other employees are similarly situated to one another because their duties consisted primarily of handling phone calls related to medical treatment of Advocate patients and related issues while working in Advocate's call centers.

79.     Plaintiffs and others similarly situated all shared similar policies, job titles, job descriptions, training, job duties and compensation, among other things.

80.     Plaintiffs and the other employees are also similar because Defendant did not pay them for all time they actually worked.

81.     Defendant knowingly required Plaintiffs and the similarly situated individuals to perform unpaid work before and after their scheduled shifts, including but not limited to booting-up computers, initializing several software programs, reading company emails and instructions, and completing customer service calls, closing software programs and/or securing confidential

information.

82.     Plaintiffs and the members of the IMWL and IWPCA Classes have been equally affected by Defendant's practice of not compensating employees for all time worked.

83.     Plaintiffs and the members of the IMWL and IWPCA Classes have been equally affected by Defendant's failure to pay all earned wages to Plaintiffs and the class members.

84.     Furthermore, members of the IMWL and IWPCA Classes still employed by Defendant may be reluctant to raise individual claims for fear of retaliation.

85.     The issues involved in this lawsuit present common questions of law and fact; these common questions of law and fact predominate over the variations that may exist between members of the Classes, if any.

86.     Plaintiffs and the members of the IMWL and IWPCA Classes, as well as Defendant, have a commonality of interest in the subject matter and the remedy sought.

87.     Plaintiffs are able to fairly and adequately represent and protect the interests of the members of the IMWL and IWPCA Classes.  Plaintiffs' Counsel are competent and experienced in litigating large wage and hour and other employment class actions.

88.     If individual actions were required to be brought by each member of the Classes injured or affected, the result would be a multiplicity of actions, creating a hardship to the members of the IMWL and IWPCA Classes, to the Court, and to Defendant.  Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Classes are entitled.

89.     Plaintiffs have retained counsel experienced in complex employment litigation and in class action litigation.

90.     Plaintiffs and their counsel will fairly and adequately protect the interest of both

classes.

## COUNT I – FLSA
### (Failure to Pay Overtime Wages)

91.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 73 as paragraph 91 of this Count I.

92.    Plaintiffs, individually and on behalf and the members of the collective described in paragraph 63, assert claims for unpaid overtime pursuant to the FLSA.

93.    At any and all times relevant hereto, Defendant was an "enterprise engaged in commerce" within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s).

94.    At any and all times relevant hereto, Defendant was an "employer" of Plaintiffs and the members of the collective described in paragraph 63 within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

95.    At any and all times relevant hereto, Plaintiffs and the members of the collective described in paragraph 63 were "employees" of Defendant as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

96.    Plaintiffs and the members of the collective described in paragraph 63 were not paid for all time worked in excess of 40 hours in a week during the applicable statutory time period, in violation of the maximum hours provisions of the FLSA, 29 U.S.C. § 207.

97.    At all times relevant hereto, Defendant's failure to pay Plaintiffs and the members of the collective described in paragraph 63 premium pay for all time worked over 40 hours in a week was willful in that, among other things:

> a.    Defendant knew that the FLSA required it to pay employees time and one-half for all time worked over 40 hours in a week;
>
> b.    Defendant failed to maintain true and accurate time records; and

c. Defendant encouraged Plaintiffs and the members of the collective described in paragraph 63 to not record all time worked.

98. As a direct and proximate result thereof, Plaintiffs and the members of the collective described in paragraph 63 are due unpaid back wages and liquidated damages, pursuant to 29 U.S.C. § 216.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, demand judgment against Defendant and in favor of Plaintiffs and all others similarly situated in a sum that will properly, adequately and completely compensate them for the nature, extent and duration of their damages, the costs of this action and as follows:

d. Declare and find that the Defendant committed one or more of the following acts:

i. Violated provisions of the FLSA for Plaintiffs and all persons who opt-in as party plaintiffs; and

ii. Willfully violated provisions of the FLSA for Plaintiffs and all persons who opt-in as party plaintiffs.

e. Award compensatory damages, including all wages and overtime pay owed, in an amount according to proof;

f. Award liquidated damages on all wages and overtime compensation due to Plaintiffs and all persons who opt-in as party plaintiffs;

g. Award all costs and reasonable attorneys' fees incurred prosecuting this claim;

h. Grant leave to amend to add claims under applicable state and federal laws to conform with the proofs at trial;

i. Grant leave to add additional plaintiffs by motion or any other method approved by the Court to conform with the proofs at trial; and

j. Grant such further relief as the Court deems just and equitable.

## <u>COUNT II – ILLINOIS MINIMUM WAGE LAW</u>
### (Failure to Pay Earned Overtime Wages)

99. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 61

and 74 through 90 as paragraph 99 of this Count II, as if fully set forth herein.

100. This Court has supplemental jurisdiction over the matters alleged herein pursuant to 28 U.S.C. § 1367.

101. The matters set forth in this Count II arise from Defendant's violation of the overtime compensation provisions of the Illinois Minimum Wage Law, 820 ILCS § 105/4a. Plaintiffs bring this action on their own behalf and on behalf of the members of the IMWL Class pursuant to 820 ILCS § 105/12(a).

102. Defendant employed Plaintiffs and other similarly situated telephone-dedicated workers as "employees," as the term "employee" is defined Section 3(d) of the IMWL, 820 ILCS § 105/3(d).

103. At all relevant times, Defendant was an "employer" of Plaintiffs and other similarly situated telephone-dedicated workers, as the term "employer" is defined by Section 3(c) of the IMWL, 820 ILCS § 105/3(c).

104. Pursuant to 820 ILCS § 105/4(a), for all weeks during which Plaintiffs and the members of the IMWL Class worked in excess of forty (40) hours, Plaintiffs and members of the IMWL Class were entitled to be compensated at one and one-half times their regular hourly rate of pay for all time worked in excess of forty (40) hours per week.

105. Defendant did not pay Plaintiffs and members of the IMWL Class one and one-half times their regular hourly rate of pay for all time worked in excess of forty (40) hours per week.

106. Defendant violated the Illinois Minimum Wage Law by refusing to compensate Plaintiffs and the members of the IMWL Class at one and one-half times their regular hourly rate of pay for all time worked in excess of forty (40) hours per week.

107. Pursuant to 820 ILCS § 105/12(a), Plaintiffs and the members of the IMWL Class

are entitled to recover statutory penalties in the amount of two percent (2%) per month of the amount of underpayments.

WHEREFORE, Plaintiffs and the members of the IMWL Class pray for a judgment against Defendant as follows:

a. That the Court determine that this action may be maintained as a class action.

b. A judgment in the amount of one and one-half times Plaintiffs' and each other member of the IMWL Class' regular rate for all time they worked in excess of forty (40) hours per week;

c. Statutory damages pursuant to the formula set forth in 820 ILCS § 105/12(a);

d. Reasonable attorneys' fees and costs incurred in filing this action; and

e. Such other and further relief as this Court deems appropriate and just.

### COUNT III – ILLINOIS WAGE PAYMENT AND COLLECTION ACT
**(Failure to Pay the Agreed Upon Rate For Work Assented to by Defendant)**

108.     Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 61 and 74 through 90 as paragraph 108 of this Count III as if fully set forth herein.

109.     Plaintiffs, individually and on behalf of all others similarly situated, bring this Count III to recover from Defendant unpaid wages, overtime compensation, statutory penalties, attorneys' fees, and costs, pursuant to Section 14(a) of the Illinois Wage Payment and Collection Act, 820 ILCS § 115/14(a).

110.     At all times relevant, and at Defendant's request, Plaintiffs and the members of the putative IWPCA Class performed work for Defendant.

111.     As set forth *supra*, Defendant assented to pay Plaintiffs and the members of the putative IWPCA Class at an agreed-upon hourly rate at or in excess of the applicable Illinois Minimum Wage Law hourly rate, for all work Defendant permitted and/or required.

112.     As set forth *supra*, Defendant assented to the hourly employees performing the

18

work described above by, among other means, Defendant's knowledge and awareness of the pre-
and post-shift work described herein.

113.     Defendant regularly observed, without objection or negative comment, the record
and documentation of having Plaintiffs and the members of the putative IWPCA Class perform
work prior to the start of their scheduled shift time, and after the end of their scheduled shift time.

114.     During their employment with Defendant, Plaintiffs and similarly situated Illinois
employees had an agreement with Defendant within the meaning of the IWPCA to be compensated
for all time worked at the rates agreed to by the parties.  Defendant did not pay Plaintiffs or
similarly situated Illinois employees for all hours worked at the rates agreed to by the parties as
described herein.

115.     Plaintiffs and the putative IWPCA Class members were entitled to be paid for all
time worked at the rate agreed to by the parties.

116.     When Defendant hired Plaintiffs and the members of the putative IWPCA Class
and advised them of the specific hourly rate they would be paid, Defendant did not inform
Plaintiffs and the members of the putative class that they would not be paid for all the work
Defendant required and/or permitted.

117.     Defendant has failed to pay Plaintiffs and the members of the putative IWCPA
Class the full amount due for all time worked on their regularly scheduled paydays, including but
not limited to their final compensation, because Defendant did not pay them for the work described
herein, in violation of the IWPCA, 820 ILCS § 115/4.

118.     Defendant has failed to pay Plaintiffs and the putative IWPCA Class the full amount
for all hours worked because of the improper practices described herein.

119.     Illinois Statutes 820 ILCS §§115/1 *et seq.* defines wages as "any compensation

owed to an employee by an employer pursuant to an employment contract or agreement between the two parties…".

120.     Under the IWPCA, payment to separated employees is termed "final compensation" and is defined as "wages, salaries, earned commissions, earned bonuses…and any other compensation owed the employee by the employer pursuant to any employment contract or agreement between the two parties." 820 ILCS § 115/2.

121.     Illinois Statutes 820 ILCS §115/4 requires employers to pay employees all wages earned by an employee during a semi-monthly or bi-weekly pay period no later than 13 days after the end of the pay period in which such wages were earned. Illinois Statutes 820 ILCS §115/5 provides that "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly schedule payday for such employee."

122.     Defendant violated Illinois Statutes 820 ILCS §§115/1 *et seq.* by regularly and repeatedly failing to properly compensate Plaintiffs and the putative IWPCA Class members for the actual time they worked each week within 13 days of the date such compensation was earned and by failing to properly compensate Plaintiffs and the putative IWPCA Class members their rightful wages by the next scheduled payday after their separation.

123.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and the putative IWPCA class have suffered and will continue to suffer lost wages and other damages.

WHEREFORE, Plaintiffs and the members of the IWPCA Class pray for a judgment against Defendant as follows:

a.  That the Court determine that this Count III may be maintained as a class action;

b.  A judgment in the amount of all back wages due, as provided by the Illinois Wage

Payment and Collection Act;

c.   Statutory damages pursuant to the formula set forth in 820 ILCS § 115/14(a);

d.   Reasonable attorneys' fees and costs incurred in filing this action; and

e.   Such other and further relief as this Court deems appropriate and just.

Dated:  July 30, 2019

Respectfully submitted,

/s/ James X. Bormes
One of Plaintiff's attorneys

James X. Bormes                          Thomas M. Ryan
Catherine P. Sons                        Law Office of Thomas M. Ryan, P.C.
Law Office of James X. Bormes, P.C.      35 East Wacker Drive
8 South Michigan Avenue                  Suite 650
Suite 2600                               Chicago, Illinois 60601
Chicago, Illinois 60603                  312-726-3400
312-201-0575